UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

REGINALD D. WEEMS,

                          Plaintiff,

          v.

STATE OF NEW YORK, NEW YORK
STATE OFFICE FOR PEOPLE WITH
DEVELOPMENTAL DISABILITIES,
FINGER LAKES DDSO, ROBERT LUM,
CHELSEY FRANZ, CALLA CUMMINGS,
AMBER MILLER, CHRISTY
DIMARIANO, GLENN BURKHARDT,
and KERRI NEIFELD, Commissioner of the
Office for People with Developmental
Disabilities, Individually and in their
Official Capacities as employees and
managers of New York State Office for
People with Developmental Disabilities,
Finger Lakes DDSO and as Aiders and
Abettors under New York Law,

                          Defendants.

_____

**DECISION AND ORDER**

6:23-CV-6305 EAW

## <u>**INTRODUCTION**</u>

Plaintiff Reginald D. Weems ("Plaintiff") brings this action asserting claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. 2000e *et seq.*, 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296,[1] alleging that defendants State of New York Office for People with

_____

[1]    Although Plaintiff's amended complaint contains a citation to 42 U.S.C. § 1985 in its introduction and is listed as a basis for jurisdiction (Dkt. 28 at ¶ 10), Plaintiff does not

Developmental Disabilities Finger Lakes Development Disabilities Service Office ("New York Office for People with Developmental Disabilities"); Robert Lum ("Defendant Lum"); Chelsey Franz ("Defendant Franz"); Calla Cummings ("Defendant Cummings"); Amber Miller ("Defendant Miller"); Christy DiMariano ("Defendant DiMariano"); Glenn Burkhardt ("Defendant Burkhardt"); and Kerri Neifeld ("Defendant Neifeld") (collectively "Defendants") discriminated and retaliated against him on the basis of his race.  (Dkt. 28).

Presently before the Court is a motion filed by Defendants to dismiss Plaintiff's amended complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6) for lack of subject matter jurisdiction and failure to state a claim.  (Dkt. 31).  For the reasons explained below, the motion to dismiss is granted in part and denied in part.

## **BACKGROUND**

The following facts are taken from the amended complaint.  (Dkt. 28).  As required on a motion to dismiss, the Court treats Plaintiff's well-pleaded factual allegations as true.

Plaintiff, an African American male, began his employment with New York Office for People with Developmental Disabilities on November 13, 2014, and remains employed there presently.  (Dkt. 28 at ¶¶ 18, 19).  Throughout his employment, Plaintiff and other African American employees faced harassment, retaliation, and differential treatment with respect to work assignments, promotions, discipline, time off and FMLA requests, and general work conditions.  (*Id.* at ¶ 21).  Plaintiff was always a satisfactory employee.  (*Id.* at ¶ 21).

---

assert a § 1985 claim or address the elements of such claim, and the Court treats any such claim as abandoned.

On or about October 5, 2019, Defendant Lum, Plaintiff's white coworker and occasional supervisor, directed a racial epithet at Plaintiff, stating, "I don't have to listen to your nigger shit." (*Id.* at ¶ 22). This incident occurred at the house run by New York Office for People with Developmental Disabilities located in Canandaigua, New York. (*Id.* at ¶ 23). On the same day and again the next week, Plaintiff complained about Defendant Lum's comments to his supervisors Defendant Cummings, Defendant Miller, and Defendant DiMariano. (*Id.* at ¶ 24).

No adverse action was taken against Defendant Lum for his racist comments, but Plaintiff was retaliated against for complaining about it. (*Id.* at ¶ 27). Specifically, less than two weeks later on October 18, 2019, Plaintiff was disciplined for failing to place his initials on a group assignment sheet. (*Id.* at ¶ 28). In the five previous years Plaintiff worked for Defendants, he was not aware of any white employee being disciplined for the same conduct. (*Id.* at ¶ 29).

In addition, on October 25, 2019, Plaintiff was suspended from work and placed on administrative leave. (*Id.* at ¶ 30). The suspension arose from allegations that Plaintiff failed to go on an outing with a consumer on October 11, 2019, but Plaintiff contends that he was not able to leave the house to attend the outing without jeopardizing the safety and security of both consumers and staff. (*Id.* at ¶¶ 31, 32). Plaintiff's suspension, for three weeks, was far more excessive than discipline issued in other cases that involved far more serious conduct. (*Id.* at ¶ 33). The suspension under false pretenses was retaliation for Plaintiff's complaints of discrimination and hostile work environment. (*Id.* at ¶ 34).

Once Plaintiff's suspension ended, he was abruptly transferred from his normal work house in Canandaigua, New York, where Defendant Lum worked, to one located farther away in Newark, New York. (*Id.* at ¶ 35). Rather than move Defendant Lum who made the racist comments, Defendants retaliated against Plaintiff with the transfer. (*Id.* at ¶ 36). The decisions to suspend Plaintiff, put him on administrative leave, and transfer him to the Newark worksite were made by Defendant Cummings, Defendant Miller, Defendant DiMariano, and Defendant Burkhardt. (*Id.* at ¶ 37). These adverse actions were taken in response to Plaintiff's complaints about discrimination. (*Id.* at ¶ 38).

Moreover, following Plaintiff's complaints about the discriminatory and hostile incidents involving Defendant Lum, Plaintiff faced increased hostility, discrimination, and retaliation from his supervisors and coworkers. Plaintiff was excluded from work meetings, not informed of necessary information to satisfactorily and safely perform his job duties, ostracized and gossiped about by supervisors and coworkers, falsely accused of work infractions, given unfair rotation schedules, and denied requests for time off and FMLA. (*Id.* at ¶ 39). In addition, Plaintiff's supervisors informed Defendant Lum of confidential information about Plaintiff's work hours even though there was no business reason for him to be apprised of that information. (*Id.* at ¶¶ 43, 44).

In addition, in mid-2018 and continuing afterward, Plaintiff's supervisor Defendant Miller subjected Plaintiff to repeated sexual advances and sexually harassed Plaintiff. (*Id.* at ¶ 56). Defendant Miller texted nude photos of herself to Plaintiff's cell phone and sent sexually explicit text messages. (*Id.* at ¶ 62). Plaintiff succumbed to Defendant Miller's advances out of fear that a refusal would result in the loss of his job or other discipline, and

retaliation.  (*Id.* at ¶ 57).  When Defendant Miller's sexual harassment of Plaintiff was discovered in late 2019, Defendants retaliated against Plaintiff, subjected him to discipline, and moved him to a different work location.  (*Id.* at ¶ 63).  Defendant Miller was not investigated or disciplined for the quid pro quo sexual harassment of Plaintiff.  (*Id.* at ¶ 65).

In addition to Plaintiff's experiences, other African Americans have made numerous complaints about discrimination and a hostile work environment to management over the years.  (*Id.* at ¶ 71).  The complaints made by Plaintiff and other African Americans were routinely ignored, and those making the complaints were disciplined or reprimanded instead.  (*Id.* at ¶ 72).

In his amended complaint, Plaintiff asserts the following claims against all Defendants: (1) Title VII claim for race discrimination, retaliation, and hostile work environment; (2) § 1981 claim for race discrimination and retaliation; (3) New York Executive Law § 296 *et seq*. claim for race discrimination; (4) § 1983 claim for race discrimination and retaliation; (5) a punitive damages claim, and (6) a *Monell* liability claim.

## PROCEDURAL BACKGROUND

Plaintiff filed his complaint on June 2, 2023.  (Dkt. 1).  On September 21, 2023, Defendants filed a motion to dismiss.  (Dkt. 26).  The Court permitted Plaintiff leave to file an amended complaint (Dkt. 27), and he filed an amended complaint on October 13, 2023 (Dkt. 28).  Defendants filed the instant motion to dismiss the amended complaint on January 19, 2024.  (Dkt. 31).  Plaintiff opposes the motion and filed his opposition on March 12, 2024.  (Dkt. 35; Dkt. 36).

# DISCUSSION

## I.    Legal Standards

### A.    Rule 12(b)(1)

"Subject matter jurisdiction is a threshold question that must be resolved before proceeding to the merits." *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (quotation and alteration omitted).  "A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it . . ."  *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.á.r.l,* 790 F.3d 411, 416-17 (2d Cir. 2015) (quotation and citation omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "When considering a motion to dismiss for lack of subject matter jurisdiction . . . a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir. 1998); *see also Tandon v. Captain's Cove Marina of Bridgeport, Inc.,* 752 F.3d 239, 243 (2d Cir. 2014) ("In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction."). *Cf. Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (when a Rule 12(b)(1) motion is fact-based, evidence beyond the pleadings may be considered).

**B.** **Rule 12(b)(6)**

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the [pleading], documents attached to the [pleading] as exhibits, and documents incorporated by reference in the [pleading]." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the [claimant]." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a [pleading] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [claimant]'s obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the [pleading]'s '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). While the Court is "obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d

Cir. 2004), even pleadings submitted *pro se* must satisfy the plausibility standard set forth in *Iqbal* and *Twombly*, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("Even after *Twombly*, though, we remain obligated to construe a *pro se* complaint liberally.").

## II.    <u>Sovereign Immunity</u>[2]

As a threshold matter, Defendants argue that sovereign immunity bars the assertion of § 1981, § 1983, and NYSHRL claims against New York state agencies and state employees in their official capacities. The Court agrees.

"Absent a waiver on the part of the state, or a valid congressional override, the eleventh amendment prohibits federal courts from entertaining suits by private parties against the states." *Farid v. Smith*, 850 F.2d 917, 920-21 (2d Cir.1988) (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985)). "State sovereign immunity not only extends to the state itself, but to state agencies that constitute 'arms of the State.'" *Barry v. City Univ. of N.Y.*, 700 F. Supp. 2d 447, 452 (S.D.N.Y. 2010) (quoting *N. Ins. Co. of N.Y. v. Chatham County, Ga.*, 547 U.S. 189, 193 (2006)). Sovereign immunity encompasses claims for

---

[2]    "[I]t appears to be a factually specific inquiry (if not an open question) whether a dismissal based on sovereign immunity is one based on a lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) or one based on a failure to state a claim under Fed. R. Civ. P. 12(b)(6)." *Weaver v. N.Y. St. Unified Ct. Sys.*, No. 1:23-CV-1518 (GTS/DJS), 2024 WL 3066906, at *6 (N.D.N.Y. June 20, 2024) (comparing cases). Other than impacting whether the dismissal on sovereign immunity grounds is with or without prejudice, the distinction is not material on this motion. *See Crichlow v. Doccs*, No. 18-CV-03222 (PMH), 2022 WL 6167135, at *6 (S.D.N.Y. Oct. 7, 2022) ("Although Moving Defendants do not reference Rule 12(b)(1) as a ground for their motion to dismiss, the 'distinction has no practical effect' in this case because whether brought under either subdivision, the Court considers on this motion 'only the pleadings and the relevant state and federal law and has drawn all inferences in Plaintiff's favor.'" (quoting *Harrison v. New York*, 95 F. Supp. 3d 293, 313 (E.D.N.Y. 2015))).

monetary damages and retrospective injunctive relief. *Constantino-Gleason v. Unified Ct. Sys.*, No. 21-CV-6327 (JLS), 2023 WL 4052302, at *8 (W.D.N.Y. June 16, 2023).

New York State Office for People with Developmental Disabilities is an arm of the state for purposes of sovereign immunity. *Barrett v. New York State, Off. for People with Developmental Disabilities*, No. 18-CV-1425JLS(SR), 2022 WL 939790, at *3 (W.D.N.Y. Feb. 1, 2022) ("As a general rule, state governments and their agencies, such as the [New York State Office for People with Developmental Disabilities], may not be sued in federal court unless they have waived the sovereign immunity afforded them by the Eleventh Amendment to the United States Constitution or there has been a valid abrogation of that immunity by Congress."), *report and recommendation adopted*, 2022 WL 928944 (W.D.N.Y. Mar. 29, 2022). Moreover, "Eleventh Amendment immunity extends to state officials 'working on behalf of the state (*i.e.* in their official capacities).'" *Kellogg v. Nichols*, No. 1:23-CV-658, 2023 WL 8046892, at *3 (N.D.N.Y. Nov. 21, 2023) (quoting *Kisembo v. NYS Off. of Child. & Fam. Servs.*, 285 F. Supp. 3d 509, 519 (N.D.N.Y. 2018)).

Many claims Plaintiff asserts in his amended complaint implicate principles of sovereign immunity. For example, "[i]t is well established that New York State has not waived its sovereign immunity from Section 1983 claims," *Harrison v. New York*, 95 F. Supp. 3d 293, 314 (E.D.N.Y. 2015) (quotation omitted), and Congress did not override that immunity by enacting § 1983, *see also Goonewardena v. N.Y.*, 475 F. Supp. 2d 310, 329 (S.D.N.Y. 2007) ("The State of New York has not waived its sovereign immunity in regard to section 1983 actions nor has its sovereign immunity been abrogated."). The same is true for Section 1981 claims, *see Harriram v. City Univ. of New York*, No. 22-CV-9712 (RA),

2024 WL 1374804, at *4 n.5 (S.D.N.Y. Mar. 31, 2024) ("For the same reasons, Harriram's § 1981 claims against CUNY and Defendants Barbera and Ebersole in their official capacities are also dismissed. 'Congress did not abrogate states' sovereign immunity for 42 U.S.C. § 1981, nor has New York waived immunity for those claims.'" (quoting *Harriram v. Fera*, No. 21-CV-3696 (RA), 2023 WL 2647856, at *7 (S.D.N.Y. Mar. 27, 2023))), as well as claims against state agencies and individual defendants sued in their official capacities under the NYSHRL, *see Iwelu v. New York State Off. of Mental Health*, No. 22-3096-CV, 2024 WL 2175938, at *2 (2d Cir. May 15, 2024) ("Congress has not abrogated, and New York has not waived, its sovereign immunity from claims brought under . . . NYSHRL."); *Oliver v. New York State Police*, No. 1:17-CV-01157 EAW, 2019 WL 453363, at *9 (W.D.N.Y. Feb. 5, 2019) ("Moreover, district courts in the Second Circuit [have] consistently found that the NYSHRL does not include a waiver of the State's sovereign immunity to suit in federal court." (quotation omitted)).

Plaintiff never addressed this issue in his opposition to Defendants' motion to dismiss, despite Defendants raising it in both their initial and instant motion to dismiss. "[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Jones v. Pawar Bros. Corp.*, 434 F. Supp. 3d 14, 20 (E.D.N.Y. 2020) (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014)). Plaintiff's failure to address sovereign immunity operates as an independent basis to dismiss these claims. *Horsting v. St. John's Riverside Hosp.*, No. 17-CV-3230, 2018 WL 1918617, at *6 (S.D.N.Y. Apr. 18, 2018) ("At the motion to dismiss stage, where review is limited to the pleadings, a plaintiff

abandons a claim by failing to address the defendant's arguments in support of dismissing that claim." (quotation and citation omitted)).[3]

There being no legal basis to permit Plaintiff's §§ 1981, 1983, and New York state-law claim against New York Office for People with Developmental Disabilities and the individual state employees in their official capacities to go forward, and Plaintiff having abandoned those claims by not opposing the motion to dismiss on sovereign immunity grounds, the claims are dismissed without prejudice.

## III. <u>Monell Claim</u>

Independently, although Plaintiff's sixth cause of action purports to be a claim for "Monell Liability," "*Monell* [*v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978)] does not provide an independent separate cause of action against a municipality; 'it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation,'" *Gem Fin. Serv., Inc. v. City of N.Y.*, 298 F. Supp. 3d 464, 490 (E.D.N.Y. 2018) (quoting *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006)). "In other words, *Monell* is not a cause of action, but is rather a form of liability." *Watkins v. Town of Webster*, 592 F. Supp. 3d 96, 118-19 (W.D.N.Y. 2022).

---

[3]    Although an exception to Eleventh Amendment immunity applies when a plaintiff is "seeking injunctive relief against a state official for an ongoing violation of law or the Constitution," known as the *Ex Parte Young* doctrine, this exception is inapplicable here because Plaintiff has not requested prospective injunctive relief and appears to only seek monetary damages in his amended complaint. *Growe v. Oswego Cty. Sup. Ct.* No. 5:24-CV-1014 (BKS/MJK), 2024 WL 3924828, at *3 (N.D.N.Y. Aug. 23, 2024) ("[T]he *Ex Parte Young* doctrine is only applicable to suits seeking declaratory and injunctive relief against state officials" (citing *Ex Parte Young*, 209 U.S. 123, 154 (1908)).

Moreover, while the holding in *Monell* provides that municipalities can be held liable for claims under § 1983, *Connick v. Thompson*, 563 U.S. 51, 60, (2011), "[t]he 'holding in *Monell* was limited to local government units which are not considered part of the State for Eleventh Amendment purposes,' and therefore does not apply to state agencies," *Levine v. New York State Police*, No. 121CV1181(BKS/CFH), 2022 WL 1987845, at *17 (N.D.N.Y. June 6, 2022) (quoting *Daly v. Town of Dewitt*, No. 18-cv-845, 2019 WL 4170162, at *3-4 (N.D.N.Y. Sept. 2, 2019)); *see also Freeman v. Rochester Psychiatric Ctr.*, No. 12-CV-6045T, 2016 WL 851782, at *4 (W.D.N.Y. Mar. 3, 2016) ("*Monell* involved claims asserted against municipalities and municipal agencies, not states or state agencies, and, in any event, expressly limited its holding to 'local governmental units which are not considered part of the State for Eleventh Amendment purposes.'" (quoting *Monell*, 436 U.S. at 690 n.54)). "Similarly, *Monell* liability does not attach to an individual state official sued in his or her individual capacity." *Levine,* 2022 WL 1987845, at *17.

As a result, Plaintiff's request that the Court defer ruling on Plaintiff's *Monell* claims until he has had an opportunity for discovery is baseless. Plaintiff's claim designated as *Monell* liability is dismissed.

## IV.   Punitive Damages Claim

Defendants argue that Plaintiff's claim for punitive damages should be dismissed because it does not state an independent cause of action.

The Court agrees that "there is no separate claim for punitive damages." *See Carbajal v. Cnty. of Nassau*, 271 F. Supp. 2d 415, 424 (E.D.N.Y. 2003). Rather, punitive

damages are a remedy. *Levin v. Johnson & Johnson*, No. CV 16-6631 (JS)(AYS), 2019 WL 6392503, at *11 (E.D.N.Y. June 17, 2019) ("[P]unitive damages are a remedy and not a separate cause of action." (quoting *Eldridge v. Rochester City Sch. Dist.*, 968 F. Supp. 2d 546, 563 (W.D.N.Y. 2013)), *report and recommendation adopted as modified*, 2019 WL 3980876 (E.D.N.Y. Aug. 23, 2019); *K.D. Hercules, Inc. v. Laborers Loc. 78 of Laborers' Int'l Union of N. Am.*, No. 20 CIV. 4829 (LGS), 2021 WL 1614369, at *4 (S.D.N.Y. Apr. 26, 2021) ("Under New York law, there is no independent cause of action for punitive damages, which must instead be sought as a remedy in connection with other claims." (quotation and citations omitted)). Indeed, Plaintiff failed to even respond to this portion of Defendant's motion.

Thus, Plaintiff's separately stated cause of action for punitive damages is dismissed without prejudice. Plaintiff's ultimate ability to recover punitive damages is unaffected by this determination.

## V.   <u>Section 1981 Claim</u>

Defendants argue that Plaintiff may not assert a separate cause of action pursuant to § 1981 because § 1983 provides the exclusive remedy for a claim against state actors. Plaintiff has not responded to Defendants' argument seeking dismissal of the § 1981 claim on this ground. Thus, at a minimum, any such claim has been abandoned.

In any event, the Court agrees that § 1981 does not serve as a valid basis for Plaintiff's claims. *See Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018) ("§ 1981 does not provide a separate private right of action against state actors" and that "'the express cause of action for damages created by § 1983 constitutes the *exclusive federal*

*remedy* for violation of the rights guaranteed in § 1981 by state governmental units'") (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989)); *Kuperman v. New York City Dep't of Educ.*, No. 20-CV-6834-LTS-VF, 2024 WL 3374803, at *1 n.1 (S.D.N.Y. July 11, 2024) ("Section 1981 claims may not be brought against state actors in their official <u>or</u> individual capacities."); *Roland v. City of New York*, No. 20-CV-05392 (TMR), 2024 WL 2832691, at *6 n.8 (S.D.N.Y. June 3, 2024) ("Section 1981 does not provide a separate private right of action against state actors."); *Chak v. New York State Dep't of Educ.*, No. 23CV2361LDHLB, 2024 WL 1282351, at *7 (E.D.N.Y. Mar. 26, 2024) ("Procedurally, this proposed cause of action fails because § 1981 applies to private parties, but 'with respect to Defendants who are state actors, Section 1983 is the exclusive remedy for violations of rights guaranteed under Section 1981.'" (quoting *Ruiz v. City of New York*, No. 14-CV-5231, 2015 WL 5146629, at *3 (S.D.N.Y. Sept. 2, 2015))).

## VI.   <u>Title VII</u>

Plaintiff's Title VII claim consists of three parts: (1) a claim for unlawful discrimination because of race, (2) a claim for retaliation for complaints about racial discrimination, and (3) a claim for race-based hostile work environment.[4]

---

[4]     The Court notes that sovereign immunity does not bar Plaintiff's claims arising under Title VII. *See Green v. Niagara Frontier Transp. Auth.*, 340 F. Supp. 3d 270, 273 (W.D.N.Y. 2018) ("It is well established that 'Congress has abrogated the states' sovereign immunity for claims under Title VII, so the Eleventh Amendment does not bar Plaintiff's claims under that statute.'" (quoting *Baez v. New York*, 56 F. Supp. 3d 456, 464 (S.D.N.Y. 2014), *aff'd*, 629 Fed. Appx. 116 (2d Cir. 2015))).

At the outset, Defendants argue that Plaintiff's Title VII claims brought against the individual defendants must be dismissed because there is no individual liability under Title VII.  The Court agrees.  Indeed, it is well-settled that there is no individual liability under Title VII. *See Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012) ("Employers, not individuals, are liable under Title VII."); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995) (recognizing that an employer's agent may not be held individually liable under Title VII and dismissing the plaintiff's claims against individual defendants), *abrogated on other grounds by Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998).   Accordingly, Plaintiff's Title VII claims asserted against each of the individual defendants—Defendant Lum, Defendant Franz, Defendant Cummings, Defendant Miller, Defendant DiMariano, Defendant Burkhardt, and Defendant Neifeld—are dismissed with prejudice.

As to the remaining defendant, New York Office for People with Developmental Disabilities, it argues that Plaintiff's Title VII claims must be dismissed because Plaintiff has failed to allege facts sufficient to establish a reasonable inference of discriminatory intent, retaliation, or a hostile work environment.  On this point, the Court disagrees.

### A.     Race Discrimination

To establish a *prima facie* case of race discrimination under Title VII, and consistent with the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff must prove that: (1) he was within the protected class; (2) he was qualified for the position and was satisfactorily performing his duties; (3) he was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.  *See Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003).

However, "[a]t the pleadings stage of the litigation, [a plaintiff is] . . . not required to plead a *prima facie* case of discrimination as contemplated by the *McDonnell Douglas* framework." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). Accordingly, "to defeat a motion to dismiss . . . in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Id.* at 87. "[T]he 'ultimate issue' in an employment discrimination case is whether the plaintiff has met h[is] burden of proving that the adverse employment decision was motivated at least in part by an 'impermissible reason,' *i.e.,* a discriminatory reason." *Id.* (internal quotations and citations omitted). "A plaintiff can meet that burden through direct evidence of intent to discriminate . . ., or by indirectly showing circumstances giving rise to an inference of discrimination." *Id.*

Taking Plaintiff's allegations as true, the Court concludes that he has plausibly stated a claim for race discrimination. Plaintiff alleges that he was called a racial epithet by a coworker who was also his occasional supervisor. He contends that the white coworker was not disciplined, and was in fact promoted, despite Plaintiff's other supervisors being expressly informed of this conduct. In addition, Plaintiff alleges that he faced disciplinary consequences for minor conduct for which white employees were not disciplined. He also alleges that he received more severe consequences as discipline than white coworkers did for more egregious infractions. Further, Plaintiff alleges that he was aware of other African American employees who faced differential treatment based on race and color with respect to work assignments, promotion, and discipline.

At this stage of the proceedings, Plaintiff's allegations are sufficient to proceed with his claim of race discrimination against New York Office for People with Developmental Disabilities. "[A]t the pleadings stage of an employment discrimination case, a plaintiff has a '*minimal* burden' of alleging facts 'suggesting an inference of discriminatory motivation.'" *Vega*, 801 F.3d at 85 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 310 (2d Cir. 2015)). Plaintiff need only plausibly allege facts "that provide at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id.* at 86 (internal quotations and citation omitted). Here, Plaintiff has done so. Accordingly, New York Office for People with Developmental Disabilities' motion to dismiss Plaintiff's Title VII race discrimination claim is denied.

## B. Retaliation

The Court next addresses Plaintiff's Title VII retaliation claim. New York Office for People with Developmental Disabilities contends that Plaintiff's retaliation claim should be dismissed because he has failed to allege facts sufficient to establish a causal connection between an adverse action and a retaliatory motive, as is required for a retaliation claim.

"[F]or a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) because he has opposed any unlawful employment practice." *Duplan*, 888 F.3d at 625 (quoting *Vega*, 801 F.3d at 90). The protected activity must be the but-for cause of the alleged adverse action by the employer, *see Univ. of Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013); in other words,

the plaintiff must plausibly allege that "the adverse action would not have occurred in the absence of the retaliatory motive," *Duplan*, 888 F.3d at 625.

A plaintiff may indirectly establish a causal connection to support a retaliation claim "by showing that the protected activity was closely followed in time by the adverse employment action." *Gorzynski*, 596 F.3d at 110 (internal quotations and citation omitted). The Second Circuit "has not drawn a bright line defining . . . the outer limits beyond which a temporal relationship is too attenuated to establish causation," but it has "previously held that five months is not too long to find the causal relationship." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 100 (2d Cir. 2010). The inquiry "is dependent on the relevant circumstances of the case." *Conforti v. Sunbelt Rentals, Inc.*, 201 F. Supp. 3d 278, 302 (E.D.N.Y. 2016). For example, a longer temporal gap may be "less salient" when the adverse action occurs at "the first opportunity that Defendants had to retaliate against Plaintiff after h[is] most recent complaint." *Haner v. Cnty. of Niagara, New York*, No. 19-CV-754-LJV-HBS, 2021 WL 230874, at *5 (W.D.N.Y. Jan. 22, 2021) (citing *Pediford-Aziz v. City of New York*, 170 F. Supp. 3d 480, 486 (E.D.N.Y. 2016)); *Cronin v. St. Lawrence*, No. 08-CV-6346, 2009 WL 2391861, at *5 (S.D.N.Y. Aug. 5, 2009) (collecting cases)).

"Informal complaints to supervisors can be considered protected activity under Title VII." *Thomas v. iStar Fin., Inc*., 438 F. Supp. 2d 348, 364 (S.D.N.Y. 2006), *aff'd,* 629 F.3d 276 (2d Cir. 2010); *Wright v. City of New York*, No. 23 CIV. 3149 (KPF), 2024 WL 3952722, at *10 (S.D.N.Y. Aug. 27, 2024) ("'[P]rotected activity' includes formal or informal complaints, protesting, or opposing statutorily prohibited discrimination."). The

informal complaints must be sufficiently specific to alert the employer of the alleged discriminatory employment practice and "'[g]eneralized complaints' about mistreatment are insufficient." *Rodriguez v. Buffalo Mun. Hous. Auth.*, No. 23-CV-87-LJV, 2024 WL 3861247, at *7 (W.D.N.Y. Aug. 19, 2024) (quoting *McCullough v. John T. Mather Hosp. of Port Jefferson, N.Y., Inc.*, 2019 WL 1755436, at *8 (E.D.N.Y. Apr. 19, 2019)). "An adverse qualifies as 'materially adverse' if it is 'harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 239 (2d Cir. 2024) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).

Here, Plaintiff contends that the decisions to unlawfully discipline, suspend, and transfer him to a different worksite all occurred within two weeks of his repeated complaints about Defendant Lum's racially motivated remarks and were decisions made in retaliation for those complaints. He contends that Defendant Lum received no discipline for his conduct and that instead, only Plaintiff was subjected to adverse action. On these facts, the Court concludes that, at this stage of the proceedings, Plaintiff has stated a claim for retaliation. New York Office for People with Developmental Disabilities' motion to dismiss Plaintiff's retaliation claim under Title VII is denied.

### C.   Hostile Work Environment Claim

Plaintiff also asserts a Title VII hostile work environment claim.[5] To state a claim for a hostile work environment claim under Title VII, "a plaintiff must allege facts to

---

[5]     In their briefs, the parties address whether allegations relating to sexual harassment were sufficiently encompassed in Plaintiff's administrative EEOC charge in a manner to

plausibly 'show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment.'" *Erno v. N.Y.S. Off. of Info. Tech. Servs.*, No. 19-CV-1457, 2020 WL 2736563, at *7 (N.D.N.Y. May 26, 2020) (quoting *Gorzynsk*i, 596 F.3d at 102). In considering a hostile work environment claim, the Court must "look to the record as a whole and assess the totality of the circumstances," and "[g]enerally, unless an incident of harassment is sufficiently severe, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Gorzynski*, 596 at 102 (internal quotations and citations omitted). The Court should consider "a variety of factors including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance[.]'" *Id.* (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993)). "Ultimately, to avoid dismissal under FRCP 12(b)(6), a plaintiff need only plead facts sufficient to support the conclusion that she was faced with harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse, and [the Second Circuit] ha[s] repeatedly cautioned against setting the bar

---

permit them to be properly before the Court in this case. But importantly, while Plaintiff's amended complaint contains factual allegations related to alleged sexual harassment by a supervisor, no claim for sexual harassment has been alleged. Accordingly, the Court need not resolve the sufficiency of such claim and declines to do based solely on arguments made in legal memoranda. *See Budhani v. Monster Energy Co*., No. 20 Civ. 1409 (LJL), 2021 WL 5761902, at *2 n.1 (S.D.N.Y. Dec. 3, 2021) ("[i]t is long-standing precedent in this circuit that parties cannot amend their pleadings [through] their briefs" (internal quotation marks omitted)).

too high' in this context." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quotations and citations omitted).

Although the allegations on this claim are somewhat thin, taking the facts in Plaintiff's amended complaint as true, the Court finds that Plaintiff has stated a plausible hostile work environment claim.  "As the Second Circuit has emphasized, 'perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates.'"  *Graham v. Cha Cha Matcha, Inc.*, No. 23 CIV. 9911 (PAE), 2024 WL 3540324, at *4 (S.D.N.Y. July 25, 2024) (quoting *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014)).  Plaintiff alleges that a racial epithet was not only uttered in his presence, but was specifically directed at him by an individual who occasionally supervised him.  He contends that his other supervisors were aware of the incident and the offending employee did not face any discipline as a result, which compounded the effect of the incident.  He also alleges that other African American employees complained of the hostile work environment and their complaints were routinely ignored.

Accordingly, the Court concludes that Plaintiff has adequately alleged a hostile work environment claim, and therefore New York Office for People with Developmental Disabilities' motion to dismiss Plaintiff's hostile work environment claim is denied.

**VII.**   **Section 1983 Claim**

As explained above, Plaintiff's § 1983 claim against New York Office for People with Developmental Disabilities and the individual defendants in their official capacities

- 21 -

are barred by principles of sovereign immunity.  Accordingly, the Court only addresses the sufficiency of the claim as against the individual defendants in their individual capacities.[6]

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)).  A plaintiff "must demonstrate that the challenged conduct was 'committed by a person acting under color of state law,' and 'deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Jie Yin v. NFTA*, 188 F. Supp. 3d 259, 268-69 (W.D.N.Y. 2016) (alteration in original) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  "A defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority.  Rather, the personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (alterations, quotations, and citations omitted).  In *Tangreti v. Bachmann*, the Second Circuit clarified that "there is no special rule for supervisory liability.  Instead, a plaintiff

---

[6]     "[U]nlike Title VII claims, Section 1983 claims may be brought against individuals." *Moss v. Bd. of Educ. of Sachem Cent. Sch. Dist.*, No. 22-CV-6212(JS)(SIL), 2024 WL 3328637, at *6 (E.D.N.Y. July 8, 2024).

must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 983 F.3d 609, 618 (2d Cir. 2020). The Second Circuit explained further that "[t]he factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue because the elements of different constitutional violations vary," and "[t]he violation must be established against the supervisory official directly." *Id.* (second alteration in original) (quotations and citations omitted).

Plaintiff's § 1983 claim contains a claim for race discrimination and retaliation. The pleading requirements for a race discrimination claim pursuant to § 1983 mirror those for a Title VII claim. *Collymore v. City of New York*, 767 F. App'x 42, 45 (2d Cir. 2019) ("Once the color of law requirement is met, a plaintiff's equal protection claim parallels h[er] Title VII claim, except that a § 1983 claim, unlike a Title VII claim, can be brought against an individual." (quoting *Vega.*, 801 F.3d at 88); *Peck v. Cnty. of Onondaga, New York*, No. 5:21-CV-651, 2021 WL 3710546, at *7 (N.D.N.Y. Aug. 20, 2021) ("Although there are certainly differences between § 1983, Title VII, and the NYSHRL, . . ., the same elements apply to each, at least at the pleading stage . . . " (quotation and citations omitted)).

To hold an individual liable for discrimination under § 1983, "such claims 'ordinarily require that the defendant be a supervisor or have some position of authority or control over the plaintiff.'" *Soso v. New York City Dep't of Educ.*, No. 221CV4660(LDH)(TAM), 2023 WL 2667048, at *5 (E.D.N.Y. Mar. 28, 2023) (quoting *Kohutka v. Town of Hempstead*, 994 F. Supp. 2d 305, 317 (E.D.N.Y. 2014)). "This is because 'it is difficult to establish that the abusive action was perpetrated under color of

state law rather than as an essentially private act' when the individual is merely a co-worker of the plaintiff." *Id.* (quoting *Kohutka*, 994 F. Supp. 2d at 317). "Personal involvement for the purposes of § 1983 for state actors in their personal capacities may be shown through action that causes a deprivation of rights as well as when a supervisor: (1) fails to remedy the violation after having been informed of it; (2) creates or tolerates a policy or custom under which the violation occurred, (3) was grossly negligent in supervising subordinates who commit the violation; or (4) fails to act on information indicating that the violation was occurring." *Gibson v. Cnty. of Suffolk*, No. 19CV03871(GRB)(ST), 2022 WL 1063017, at *12 (E.D.N.Y. Feb. 18, 2022).

Plaintiff's amended complaint alleges that Defendant Lum, Defendant Cummings, Defendant Miller, and Defendant DiMariano were Plaintiff's supervisors.[7] He alleges that Defendant Lum was an occasional supervisor who used the racial epithet towards him and that Defendant Cummings, Defendant Miller, and Defendant DiMariano participated in the decisions not to discipline Defendant Lum and instead, to discipline Plaintiff, transfer his work station, and suspend him for conduct that was far less egregious than that for which white employees received lesser sanctions. While the use of "group pleading" is generally impermissible, *see Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Surgalign Spine Techs., Inc.*, No. 22-CV-09870 (JLR), 2024 WL 477031, at *4 (S.D.N.Y. Feb. 7, 2024) ("It is well-established in this Circuit that plaintiffs cannot simply 'lump' defendants together for

---

[7]     Although the allegations about Defendant Lum's supervisory role are not clear from the amended pleading, at this time, because Plaintiff identifies Defendant Lum as his occasional supervisor (Dkt. 28 at ¶ 22), the Court will permit the claim against Defendant Lum to proceed in that capacity.

pleading purposes." (quoting *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 531 F. Supp. 3d 673, 728 (S.D.N.Y. 2021))); *Abadi v. NYU Langone Health Sys.,* No. 21CIV11073RAGWG, __ F. Supp. 3d __, 2024 WL 396422, at *2 (S.D.N.Y. Feb. 2, 2024) (noting that the use of "group pleading" is "routinely rejected by courts as insufficient to state a claim as to any particular defendant"), in this case, Plaintiff specifically alleges that each of these defendants had a supervisory role and they were personally and jointly involved in decisions that he contends were racially discriminatory.  At this time, these allegations are sufficient to plausibly allege a race discrimination claim against them.

But the same is not true for the remaining defendants.  For example, Defendant Franz's name is contained in the caption of the amended complaint but does not appear anywhere in the body except to identify her location of residence.  This is plainly insufficient to demonstrate personal involvement and Defendants' motion to dismiss the claim against Defendant Franz is granted.

Defendant Neifeld, the Commissioner of New York Office for People with Developmental Disabilities, is also only listed in the caption and in one paragraph that identifies her title.  This is insufficient for personal involvement.  *See Williams v. Audubon TP4 LLC*, No. 23-CV-8758 (LTS), 2023 WL 8528552, at *5 (S.D.N.Y. Dec. 5, 2023) ("A defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. . . .  Plaintiff does not allege any facts showing how Commissioner Carrion was personally involved in the events underlying his claims.  Plaintiff's claims against Carrion are therefore dismissed for failure to state a claim on which relief may be granted."); *Lefler v. Annucci*, No. 22-CV-6468-

FPG, 2023 WL 6066128, at *3 (W.D.N.Y. Sept. 18, 2023) ("Plaintiff is attempting to hold Commissioner Annucci liable simply because of his position at the top of the . . . chain of command.  However, 'a defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority.'" (quoting *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996))).  Because Plaintiff has not plead a single allegation as to how Defendant Neifeld participated in or even had any knowledge of the facts alleged in the complaint, dismissal of this claim against her is warranted.

Finally, although the amended complaint suggests that Defendant Burkhardt is alleged to have participated in the decision to suspend Plaintiff and put him on administrative leave, (Dkt. 28 at ¶ 37), there are no other facts in the entire amended pleading explaining who he is or what role he played other than this sole conclusory allegation.  This is insufficient to demonstrate his personal involvement.

For these reasons, Defendants' motion to dismiss Plaintiff's § 1983 discrimination claim is denied as to Defendant Lum, Defendant Cummings, Defendant Miller, and Defendant DiMariano in their individual capacities, and granted as to Defendant Franz, Defendant Neifeld, and Defendant Burkhardt.

Similar to § 1983 race discrimination claims, retaliation claims under this statute are "evaluated using the same standards as Title VII retaliation claims."  *Miller v. Ahearn*, No. 20 CIV. 2950 (NSR), 2024 WL 3876378, at *5 (S.D.N.Y. Aug. 20, 2024) (citing *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)).  "For this type of retaliation claim to survive a motion to dismiss, a plaintiff must plausibly allege that the defendants took adverse employment action against her because she complained of or otherwise opposed

discrimination." *Butts v. New York City Dep't of Educ.*, No. 16CV5504NGGRML, 2018 WL 4725263, at *12 (E.D.N.Y. Sept. 28, 2018) (citing *Vega*, 801 F.3d at 91).

For the same reasons set forth above, Plaintiff's retaliation claims against Defendant Franz, Defendant Neifeld, and Defendant Burkhardt do not sufficiently allege personal involvement in any aspect of Plaintiff's claims and are subject to dismissal on this basis.

But as to Defendant Cummings, Defendant Miller, and Defendant DiMariano, the Court will permit the retaliation claims to proceed. Plaintiff has alleged that he specifically complained to these individuals about racial discrimination and that they jointly were responsible for the adverse actions taken against Plaintiff within weeks of his complaints. Accordingly, at this stage of the proceedings, Plaintiff's § 1983 claim against these defendants may proceed.

It is a closer question regarding Defendant Lum. While Plaintiff does refer to Defendant Lum as an occasional supervisor, he does not allege that Lum played any role in suspending Plaintiff, placing him on administrative leave, or transferring him to a new worksite. There being no allegation that Defendant Lum took any adverse action against Plaintiff in response to Plaintiff's opposition to discrimination, the retaliation claim against Defendant Lum is dismissed.

In sum, Defendants' motion to dismiss Plaintiff's § 1983 retaliation claim is denied as to Defendant Cummings, Defendant Miller, and Defendant DiMariano in their individual capacities, and granted as to Defendant Lum, Defendant Franz, Defendant Neifeld, and Defendant Burkhardt.

## VIII.  **NYSHRL Claim**

Finally, like Plaintiff's § 1983 claim, Plaintiff's NYSHRL claims against New York Office for People with Developmental Disabilities and the individual defendants in their official capacities are barred by principles of sovereign immunity.  Accordingly, the Court only addresses the sufficiency of the claim as against the individual defendants in their individual capacities.

At least until 2019, the standards for NYSHRL discrimination claims echo those for Title VII and § 1983.  *Myers v. Cnty. of Nassau*, No. 22-CV-07023 (OEM), 2024 WL 3675815, at *5 (E.D.N.Y. Aug. 6, 2024) ("To establish a prima facie case of employment discrimination under both Title VII and the New York State Executive Law, a plaintiff must show that (1) he is a member of a protected class, (2) he was qualified for his employment position, (3) he suffered an adverse employment action, and (4) the defendant's discrimination on the basis of the plaintiff's membership in a protected class motivated the adverse employment action."  (quoting *Ganny v. FJC Sec. Servs., Inc.,* No. 15-CV-1965 (FB), 2016 WL 4939312, at *1 (E.D.N.Y. Sept. 14, 2016))).[8]

---

[8]     Among other things, amendments to the NYSHRL that came into effect in 2019 "eliminated the 'severe or pervasive' standard" for a hostile work environment claim. *Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*, No. 21 Civ. 02512 (CM), 2022 WL 524551, at *9 (S.D.N.Y. Feb. 22, 2022) (citing N.Y. Exec. Law § 300).  But the amendments are not retroactive.  *Id.* (citing *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68-69 (S.D.N.Y. 2020)); *see also Kenny v. Cath. Charities Cmty. Servs.*, No. 20 Civ.3269 (PAE) (RWL), 2023 WL 1993332, at *26 n.23 (S.D.N.Y. Feb. 14, 2023) (same).  The Court need not resolve at this time whether the amendments apply to Plaintiff's claims, as under even the heightened federal standard the claims survive.

"Under the NYSHRL, individual liability may be imposed if (1) a defendant . . . has the authority to hire or terminate its employees; or (2) if a defendant aided and abetted the unlawful discriminatory acts of others." *Mitura v. Finco Servs., Inc.*, 23-CV-2879 (VEC), 2024 WL 232323, at *11 (S.D.N.Y. Jan. 22, 2024). Defendants argue that Plaintiff cannot sustain an NYSHRL claim against the individual defendants in their individual capacities as aiders and abettors because the claim against New York Office for People with Developmental Disabilities is not viable. In other words, Defendants contend that because liability of the employer is a factual predicate to a claim against an employee, the claims against the individual defendants necessarily fail. *Dawkins v. State Univ. of New York at Cortland*, No. 5:23-CV-1163 (GTS/MJK), 2024 WL 3377938, at *7 (N.D.N.Y. July 11, 2024) ("[A] coworker cannot aid and abet the employer if the employer itself cannot be held liable." (quoting *Peck*, 2021 WL 3710546, at *14)). There is authority for this position. *See id.* (citing *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 253 (E.D.N.Y. 2015) (holding that claim against individual defendant could not proceed where claim against employer was barred by Eleventh Amendment) and *Wiley v. Plattsburgh*, 407 F. Supp. 3d 119, 126-27 (N.D.N.Y. 2019) (holding that dismissal of NYSHRL claim against employer on grounds of sovereign immunity directed finding that individual defendant could not be liable for aiding and abetting)). On the other hand, other courts have held that because a dismissal on grounds of sovereign immunity does not operate as a dismissal on the merits of the claim, an aider and abettor claim may still be cognizable against employees in their individual capacities. *See id.* (citing *Huffman v. Brooklyn Coll.*, 20-CV-6156, 2022 WL 43766, at *3 (E.D.N.Y. Jan. 5, 2022) (holding that a sovereign immunity bar to recovery

"does not extinguish predicate liability on the merits," or operate to preclude aider/abettor claim against individual employee) and *Tromblee v. New York*, 19-CV-0638, 2021 WL 981847, at *16-17 (N.D.N.Y. Mar. 16, 2021) (holding that determination that claim against state employer is barred by sovereign immunity does not direct a conclusion against the employer on the merits and bar claims against individuals under an aider/abettor theory)).

At this point, the Court will follow the line of cases concluding that the dismissal of New York Office for People with Developmental Disabilities on grounds of sovereign immunity does not necessarily direct that dismissal of the claims against the individual defendants in their individual capacities is required.  Accordingly, for the same reasons that Plaintiff's § 1983 discrimination claims may proceed against Defendant Lum, Defendant Cummings, Defendant Miller, and Defendant DiMariano in their individual capacities so too does the NYSHRL claim against those defendants survive the instant motion.  And for similar reasons, Defendants' motion to dismiss the NYSHRL claim against Defendant Franz, Defendant Neifeld, and Defendant Burkhardt in their individual capacities is granted.

## IX.   <u>Leave to Amend</u>

Finally, in his opposition to Defendants' motion to dismiss, Plaintiff "respectfully request[s] that he be granted further leave to amend his Complaint to further state and amplify his claims."  (Dkt. 36 at 22).  Not only has Plaintiff already amended his complaint as of right in response to Defendants' initial motion to dismiss (and yet, as outlined here, failed to cure some of the problems with the pleading), Plaintiff's summary request in opposition to the pending motion "is not a proper motion for leave to amend, and fails to

comply with the Local Rules of Civil Procedure with respect to the process for seeking to amend a pleading." *Wi3, Inc. v. Actiontec Elecs., Inc.*, 71 F. Supp. 3d 358, 363 (W.D.N.Y. 2014) (explaining that, among other things, this District's Local Rules require the party seeking to amend a pleading to "identify the proposed amendments through the use of a word processing red-line function or other similar markings" (quotations omitted)). Thus, this "cursory or boilerplate request[ ] . . . , made solely in a memorandum in opposition to a motion to dismiss," *Malin v. XL Cap., Ltd.*, 312 F. App'x 400, 402 (2d Cir. 2009), is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. 31) is granted in part and denied in part as follows:

(1) Defendants' motion to dismiss Plaintiff's Title VII claim for race discrimination, retaliation, and hostile work environment is granted as to the individual defendants but denied as to New York Office for People with Developmental Disabilities;

(2) Defendants' motion to dismiss Plaintiff's § 1981 claim is granted;

(3) Defendants' motion to dismiss Plaintiff's NYSHRL claim for race discrimination is granted as to New York Office for People with Developmental Disabilities and the individual defendants in their official capacities without prejudice, and with prejudice as to Defendant Franz, Defendant Neifeld, and Defendant Burkhardt in their individual capacities, but denied as to Defendant Lum, Defendant Cummings, Defendant Miller, and Defendant DiMariano in their individual capacities;

(4) Defendants' motion to dismiss Plaintiff's § 1983 claim for race discrimination is granted as to New York Office for People with Developmental Disabilities and the individual defendants in their official capacities without prejudice, and with prejudice as to Defendant Franz, Defendant Neifeld, and Defendant Burkhardt in their individual capacities, but denied as to Defendant Lum, Defendant Cummings, Defendant Miller, and Defendant DiMariano in their individual capacities. Defendants' motion to dismiss Plaintiff's § 1983 claim for retaliation is granted as New York Office for People with Developmental Disabilities and the individual defendants in their official capacities without prejudice, and with prejudice as to Defendant Lum, Defendant Franz, Defendant Neifeld, and Defendant Burkhardt in their individual capacities, but denied as to Defendant Cummings, Defendant Miller, and Defendant DiMariano in their individual capacities;

(5) Defendants' motion to dismiss Plaintiff's separately-pleaded punitive damages claim is granted; and

(6) Defendants' motion to dismiss Plaintiff's *Monell* liability claim is granted.

The Clerk is directed to enter judgment in favor of Defendant Franz, Defendant Burkhardt, and Defendant Neifeld.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 10, 2024
       Rochester, New York

- 32 -